**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL STANSELL, | ) | CASE NO. 1:22-cv-02222 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH FOLEY, Warden, | ) | **MEMORANDUM  OPINION  AND** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

Before the Court are two dispositive motions: (i) Plaintiff Michael Stansell's motion for summary judgment (ECF No. 41); and (ii) Defendant Keith Foley's motion for summary judgment (ECF No. 42).  The parties have filed their respective briefs in opposition, (ECF Nos. 44, 45), and replies in support, (ECF Nos. 46, 47).  For the reasons discussed below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

I.      **FACTUAL BACKGROUND**

Plaintiff is an inmate at the Grafton Correctional Institution ("GCI"), located in Grafton, Ohio.  (ECF No. 1, PageID #1–2).  Defendant is the Warden of GCI.  (*Id.* at PageID #1).  In December 2013, while housed at GCI, Plaintiff underwent emergency surgery and received a colostomy.  (*Id.* at PageID #2).  After this surgery, Plaintiff was provided with a single cell as an accommodation, starting February 13, 2014.  (*Id.*).  From December 2013 through August 2014, Plaintiff experienced repeated infections and, ultimately, his colostomy was reversed.  (*Id.* at PageID #3).  In July 2015, Plaintiff's single cell accommodation was lifted.  (*Id.*).

1

In September 2017, Plaintiff filed a complaint against GCI in the Northern District of Ohio, which asserted that GCI violated the Americans with Disability Act, the Rehabilitation Act of 1973, and the Eighth and Fourteenth Amendments when it failed to accommodate Plaintiff's request for single cell.  Compl., *Stansell v. Grafton Corr. Inst.*, No. 1:17-cv-1892 (N.D. Ohio Sept. 8, 2017); (ECF No. 1, PageID #2).  In January 2021, this prior case was dismissed pursuant to a settlement agreement between Plaintiff and GCI.  ECF No. 78, *Stansell v. Grafton Corr. Inst.*, No. 1:17-cv-1892 (N.D. Ohio Jan. 19, 2021); (ECF No. 1, PageID #2).  The settlement agreement did not include an agreement to assign or house Plaintiff in a single cell.  *See* ECF No. 81-1, *Stansell v. Grafton Corr. Inst.*, No. 1:17-cv-1892 (N.D. Ohio Aug. 27, 2021).

On April 26, 2021, Doctors Steven Scoville and Sherman Katz issued a Surgery Progress Note concerning Plaintiff which included a treatment recommendation of a single cell.  (ECF No. 1-2, PageID #14–15).  On November 3, 2021, Petitioner filed an Inmate Reasonable Accommodation Request for a single cell.  (*Id.* at PageID #20–21).  The request was denied because GCI "does not have the authority to change the institutional bed count."  (*Id.* at PageID #21).  The denial also recommended the alternative "reasonable" accommodation of continuing Plaintiff's living assignment in a unit with a handicapped-accessible bathroom and providing Plaintiff with continual access to toilet paper.  (*Id.*).  On January 13, 2022, Plaintiff filed a second Inmate Reasonable Accommodation Request, which was denied for the same reasons as the original on April 1, 2022.  (*Id.* at PageID #22–23).  GCI issued a revised decision which stated that the request for a single cell accommodation was not feasible.  (*Id.* at PageID #24).  Plaintiff filed appeals from the above denials to the Special Needs Assessment Committee, which were denied on April 20, 2022.  (*Id.* at PageID #26).

## II.     PROCEDURAL BACKGROUND

On December 8, 2022, Plaintiff filed a complaint against Defendant based on GCI's failure to accommodate Plaintiff's request for a single cell despite his disability. (ECF No. 1). Plaintiff asserts three causes of action: (i) refusal to provide a reasonable accommodation in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101–12213; (ii) a violation of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 705(20)(B)(2007); and (iii) a violation of Plaintiff's Eighth Amendment (cruel and unusual punishment) and Fourteenth Amendment (equal protection) rights. (*Id.* at PageID #7–8). Plaintiff requests damages, as well as injunctive and declaratory relief. (*Id.* at PageID #8–9).

On January 24, 2025, Plaintiff moved for summary judgment. (ECF No. 41). Defendant filed a cross motion for summary judgment on January 31, 2025. (ECF No. 42). The parties filed their respective oppositions, (ECF Nos. 44, 45), as well as their replies in support, (ECF Nos. 46, 47). Plaintiff also filed a surreply titled as a response to Defendant's reply brief. (ECF No. 48). Defendant filed a motion to strike Plaintiff's surreply ("Motion to Strike"). (ECF No. 49).

Upon consent of the parties, (ECF Nos. 50, 51), the case was referred to Magistrate Judge James E. Grimes Jr. for a settlement conference. (Order [non-document] dated Aug. 4, 2025). A settlement conference was held on September 24, 2025 and October 17, 2025; the parties were ultimately unable to reach a settlement, and the settlement conference referral was terminated. (ECF Nos. 52, 54).

## III.     MOTION TO STRIKE SURREPLY

The Court will first address Defendant's Motion to Strike before addressing the merits of the cross-motions of summary judgment. Defendant moves to strike Plaintiff's response to his reply in support because it is a surreply and Plaintiff failed to: (i) comply with Local Rule 7.1 by

failing to seek leave of the Court before filing; and (ii) demonstrate sufficient cause to warrant such a filing.  (ECF No. 49, PageID #414–16).  Plaintiff filed no opposition to the Motion to Strike.

Under Local Rule 7.1, when "a party files a motion . . . the non-moving party [is permitted] to file an opposition and the moving party to file a reply."  However, "[n]either the Federal Rules of Civil Procedure, nor the Northern District of Ohio's Local Rules, provide for a surreply brief as a matter of course" *In re Steinle*, 835 F. Supp. 2d 437, 443 (N.D. Ohio 2011) (citing L.R. 7.1) (cleaned up).  Thus, a party who wishes to submit additional briefing *must* seek leave of court.  *Cf. Eberhard v. Chi. Title Ins. Co.*, No. 1:11-cv-834, 2014 U.S. Dist. LEXIS 199698, at *8–9 (N.D. Ohio Jan. 8, 2014).  Whether to grant leave to file a surreply lies within the discretion of the Court. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 264–65 (6th Cir. 2014).

A court may strike "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  That said, "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

Plaintiff did not move for leave before filing his surreply.  The majority of the surreply does not respond to new arguments raised in Defendant's reply but focuses on arguments previously raised in Defendant's motion for summary judgment.  (ECF No. 48, PageID #406 (citing ECF No. 42, PageID #286–88)).  For the most part, Defendant did not present new evidence or raise new arguments in his reply brief that would necessitate a response via surreply.  *See Key*, 551 F. App'x at 265 ("[S]urreplies . . . may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)) (alteration in original)).  Defendant did raise a new issue in his reply

brief, arguing that Plaintiff had produced a housing memorandum related to the protective control of another prisoner which had been altered—Exhibit B to Plaintiff's opposition brief (ECF No. 44-2). (ECF No. 46, PageID #383–84). Thus, the Court will decline to strike Plaintiff's surreply so that he can respond to Defendant's accusation. At the same time, the Court will otherwise decline to consider the remainder of the surreply given that it addresses old arguments and rehashes arguments contained in Plaintiff's prior briefs. The Motion to Strike (ECF No. 49) is **DENIED**.

## IV.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006). A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law." *Id*. The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The court views the facts and draws all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986);

*Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

The standard of review for summary judgment does not change when parties have filed cross-motions for summary judgment.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  The Court is not required to grant summary judgment in favor of either side: "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

**B.**     **Analysis**

*1.*     *Capacity to Sue Defendant Individually and in Official Capacity*

Plaintiff is suing Defendant individually and in his official capacity as the warden of GCI. (ECF No. 1, PageID #1–2).  Defendant argues that Plaintiff cannot maintain his ADA and RA claims against him in his individual capacity because neither the ADA nor RA permit public employees to be sued in their individual capacities.  (ECF No. 42, PageID #282–83).  Plaintiff offers no response to this argument.  Because he offered no opposition in response to the above argument for dismissal raised by Defendant, Plaintiff has abandoned his ADA and RA claims against Defendant in his individual capacity, and waived any argument in opposition to the dismissal of those claims.  *See Bennett v. Hurley Medical Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited."); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186,

6

207 (N.D. Ohio 2020) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

The Court also agrees with Defendant on the merits. The ADA and RA claims asserted against Defendant in his individual capacity in Counts I and II fail as a matter of law because "neither the ADA nor the RA impose liability upon individuals." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *see also Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 837 (6th Cir. 2020) (holding that a district court properly dismissed the ADA and RA claims against a defendant in her individual capacity because the proper defendant is the public entity or an official in her official capacity) (collecting cases); *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("Title II of the ADA does not provide for a cause of action against government officials sued in their individual capacities."). Thus, the Court **DISMISSES** Counts I and II to the extent they are asserted against Defendant in his individual capacity.

Defendant also argues Eleventh Amendment immunity bars Plaintiff's ability to sue him for money damages in his official capacity with relation to the ADA and RA claims. (ECF No. 42, PageID #283). Once again, Plaintiff fails to oppose this argument. Thus, as discussed above, Plaintiff has abandoned his ADA and RA claims for money damages against Defendant in his official capacity, and waived any argument in opposition to the dismissal of those claims. *See Bennett*, 86 F.4th at 324. Defendant is also right on the merits. To the extent that Plaintiff was suing Defendant in his official capacity for money damages, his claim is barred by Eleventh Amendment immunity. *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864 (6th Cir. 2024); *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)); *see also Baker v. Chandler*, No. 23-5015,

2023 U.S. App. LEXIS 26259, at \*2 (6th Cir. Oct. 3, 2023) ("And because states enjoy Eleventh Amendment immunity against claims for damages, government officials are immune from claims for damages when sued in their official capacities."). Accordingly, any claims asserted against Defendant for money damages in his official capacity are **DISMISSED**.

That said, for Counts I, II, and III, Eleventh Amendment immunity does not preclude Defendant from pursuing declaratory and injunctive relief against Defendant in his official capacity. Plaintiff is also not barred by Eleventh Amendment immunity from suing Defendant in his individual capacity for money damages with respect to the § 1983 claims asserted in Count III.

1. *Counts 1 and 2 – Failure to Accommodate under the ADA and RA*

The Court can address Plaintiff's claims for failure to accommodate under the ADA and RA in Counts I and II together because "the ADA and the RA set forth the same remedies, procedures, and rights[.]" *See Thompson v. Williamson County*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). To establish a prima facie case under the ADA and the RA for failure to accommodate, a plaintiff must demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation." *See Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 U.S. App. LEXIS 31001, at \*6 (6th Cir. Oct. 31, 2018) (citing *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018)); *see also Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing 42 U.S.C. § 12132); *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). The main difference between the two claims is that "RA claims—unlike ADA claims—impose an extra causation requirement: the plaintiff must show that the discrimination was 'solely' because of his disability." *Finley*, 102 F.4th at 820. "A public

8

entity denies a plaintiff access to government services 'because of' their disability when it fails to provide a reasonable accommodation for their disability." *Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, at *19 (6th Cir. Aug. 3, 2022) (citing *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021); *Madej v. Maiden*, 951 F.3d 364, 373 (6th Cir. 2020)).

a.      Plaintiff is Disabled and a "Qualified Individual"

As an initial matter, Defendant does not concede that Plaintiff is disabled or a "qualified individual" under the ADA. (ECF No. 42, PageID #286). At the same time, Defendant does not provide any argument or evidence to dispute that Plaintiff qualifies as disabled or a qualified individual under the ADA. Under the ADA, a person is disabled if they: (1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a history or record of such an impairment; or (3) are perceived by others as having such an impairment. 42 U.S.C. § 12102(1). The ADA defines "major life activities" to include the operation of major bodily functions, such as digestive, bowel, and bladder functions. 42 U.S.C. § 12102(2). Given the uncontested medical evidence presented by Plaintiff about his physical impairment substantially limiting his bowel functions, GCI's response to Plaintiff's reasonable accommodation requests (including providing access to handicap bathrooms), and GCI previously providing a single cell accommodation for Plaintiff's medical condition in 2014 and 2015, the Court finds that Plaintiff is disabled under the ADA and the RA.

Under Title II, a "qualified individual" is someone with a disability who, "with or without modifications . . . , meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The Supreme Court has held that the ADA applies to state prisons and prisoners. *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209–10, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) ("State prisons fall

9

squarely within the statutory definition of 'public entity.'").  The phrase "'services, programs, or activities' encompasses virtually everything a public entity does."  *Anderson*, 798 F.3d at 356. Under the statute, the bathrooms provided by GCI constitute "services, programs, or activities provided by a public entity" and the denial of meaningful access to GCI's bathroom facilities can support an ADA claim. *See Keller v. Chippewa Cnty.*, 860 F. App'x 381, 386 (6th Cir. 2021). Thus, the Court finds that Plaintiff is a "qualified individual" under the ADA and RA.

> b.  Exclusion from Service—Failure to Accommodate

The crux of the parties' dispute is whether Defendant failed to provide Plaintiff with a reasonable accommodation for his disability.  Plaintiff appears to set forth two theories as to how Defendant did not reasonably accommodate his disability in failing to provide a single cell: (i) Plaintiff is being denied access to rehabilitation programming; and (ii) Defendant is preventing meaningful access to bathroom facilities.  (ECF No. 41, PageID #272–73; ECF No. 44, PageID #364–65; ECF No. 47, PageID #398–99).  The Court will address these two theories separately.

> i.  Access to rehabilitation programming

With respect to rehabilitation programing, the complaint alleges that Defendant denied Plaintiff's ADA reasonable accommodation request and restricted him "to a housing unit with a 'handicapped restroom' which forestalls Plaintiff's ability to participate in federally funded programming available to prisoners without disabilities, including, but not limited to, the 'Normalcy Units'; . . . [and] federally-funded rehabilitative and Re-Entry programming[.]"  (ECF No. 1, PageID #4–5, ¶¶ 28, 35).  Plaintiff argues that the denial of his single-cell request has resulted in his exclusion from any rehabilitation programming outside of his currently assigned unit because GCI has "unit-based programming" which requires a prisoner to reside in the specific unit where the particular program is being conducted.  (ECF No. 41, PageID #272; ECF No. 47,

PageID #398).  Plaintiff cites the Prison Fellowship Academy, which is restricted to residents of Unit A-2, dog training programs for residents of A-1, A-3, and B-5, and Restorative Citizen Normalcy Centers for residents in A-1 and B-5.  (ECF No. 44, PageID #365; ECF No. 47, PageID #399).

Defendant first responds that Plaintiff continues to participate in various programs within his current housing assignment.  (ECF No. 45, PageID #376 (citing ECF Nos. 42-1, 42-2, 42-3, 42-4)).  He then contends that Plaintiff's argument fails because even if he is transferred to a single cell, he would always be restricted to the programs available in the specific unit in which the cell is located.  (ECF No. 45, PageID #376; ECF No. 46, PageID #384).  Finally, Defendant argues that the ADA and RA claims fail because Plaintiff has provided no allegations or evidence that he was denied access to programs *because* he is disabled.  (ECF No. 42, PageID #288).

The Court finds that Plaintiff's ADA and RA claims based on alleged exclusion from rehabilitation programming fail as a matter of law.  First, the Court agrees with Defendant that Plaintiff's argument lacks logic.  Plaintiff claims that he is being excluded from specific "unit-based programming" in housing units outside the unit he is assigned.  Still, if "unit-based programming" is limited solely to the residents of a specific unit, then all prisoners residing outside of a specific unit, whether they are disabled or not, are excluded from those specific programs. Plaintiff does not allege, argue, or provide evidence that the unit in which he currently resides lacks access to programming or that he is being excluded from the programming available to him in that unit.  Plaintiff also does not allege or argue that he has requested to participate in programming outside of his current unit or requested a transfer to another unit for the purpose of participating in any of its programs and that such a request has been denied.  Moreover, Plaintiff solely requested an accommodation of a single cell to address his access to a toilet; he does not

explain how this would solve or ameliorate the issue of participating in programming in other residential units outside the unit where this hypothetical single cell might be located. As a result, Plaintiff has provided no evidence nor a cogent argument that his exclusion from "unit-based programming" outside his current unit was significantly motivated by discriminatory animus. *See Anderson*, 798 F.3d at 357 (holding that a plaintiff alleging intentional discrimination under the ADA must "present evidence that animus against the protected group was a significant factor in" the discriminatory conduct); *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (noting that a claim for intentional discrimination under the RA requires a denial of benefits solely by reason of disability).

Second, and more importantly, this specific theory fails as a matter of law because a viable failure-to-accommodate claim requires an allegation that the prison denied a "direct and specific" request for a reasonable accommodation. *Johnson v. Dobbins*, No. 22-5301, 2022 U.S. App. LEXIS 31165, at *8–9 (6th Cir. Nov. 8, 2022). The record demonstrates that Plaintiff requested a single cell accommodation because he had a loss of sensation in his bowels and frequent bowel movements which required constant access to a bathroom. (ECF No. 1-2, PageID #20–24). There is no evidence that Plaintiff requested a transfer to a residential unit because he was excluded from specific rehabilitative programming or that he otherwise requested a transfer because he wished to participate in other "unit-based programming." Because Plaintiff failed to make such a direct and specific request for access to "unit-based programming," such a claim for failure to accommodate fails as a matter of law.[1] *See Johnson*, 2022 U.S. App. LEXIS 31165, at *8–9.

---

[1] Not to mention that Plaintiff failed to properly exhaust administrative remedies with respect to such a claim. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (holding that the PLRA's exhaustion requirement is not limited to §1983 cases but also applies to any action under federal law brought by a prisoner concerning prison conditions); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (2007) ("[W]e hold that the plain language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to exhaust through available administrative remedies before filing suit."). That said, the Court cannot dismiss the claim on this ground because failure to exhaust is an affirmative defense that was not properly raised, supported,

ii.      Constant Access to a Toilet

Plaintiff argues that he was provided with a "Medical ADA Order for a single cell" by Dr. Katz, Defendant denied Plaintiff's ADA request for a single cell, and Plaintiff is denied constant, adequate access to a restroom during "count time" when he is locked in his cell with his cellmate. (ECF No. 41, PageID #271–72; ECF No. 44, PageID #362).  Defendant responds that: (i) Plaintiff has provided no evidence as to how Defendant deprived or limited Plaintiff's access to a toilet; (ii) Plaintiff admits to access to a handicap bathroom when he is away from his cell; and (iii) Plaintiff admits he has access to a toilet in his cell, but not the access he desires.  (ECF No. 45, PageID #376).

Defendant also argues that the complaint, at most, alleges that Plaintiff was denied proper access to a restroom based on ongoing issues with his cellmate, but this does not support an ADA or RA discrimination claim.  (ECF No. 42, PageID #288).  Plaintiff does not respond to this argument in his opposition.  The complaint alleges that "Plaintiff has issues with cellmates when needing to use the restroom, during the times of being locked in the cell for count, and the night time hours; Leaving Plaintiff times when incontinence is an issue for the reasons of not having unrestricted restroom access[.]"  (ECF No. 1, PageID #5, ¶ 31).

To prevail on a failure to accommodate claim, a plaintiff must demonstrate that: (i) "the defendant reasonably could have accommodated his disability but refused to do so"; and (ii) "the failure to accommodate impeded his ability to participate in or benefit from a program or service." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *Knox Cnty. v. M. Q.*, 62 F. 4th 978, 1000 (6th Cir. 2023)).  As explained by the Sixth Circuit:

> The determination of what counts as a reasonable accommodation is specific to each case.  *Bennett*, 86 F.4th at 326.  Covered entities must make "reasonable

---

or addressed in Defendant's motion for summary judgment.  *See Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

13

> modifications in policies, practices, or procedures" when such modifications are "necessary to avoid discrimination on the basis of disability."  But entities need not grant an accommodation if they can prove that it would impose "undue financial and administrative burdens" or "fundamentally alter the nature" of their services or programs.  28 C.F.R. §§ 35.130(b)(7), 35.150(a)(3) (implementing Title II of the ADA); *see also McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459–60, 463 (6th Cir. 1997) (en banc) (explaining that RA failure-to-accommodate claims follow the same framework).  Moreover, plaintiffs are not entitled to their "preferred" accommodation; rather, an accommodation suffices if it provides the plaintiff "meaningful access" to the covered entity's programs or services.  *Bennett*, 86 F.4th at 326 (quoting *Ability Ctr.*, 385 F.3d at 907).

*Id.* at 820–21.  Thus, for Plaintiff to succeed on this failure to accommodate claim, he must prove that: (i) Defendant could have reasonably assigned Plaintiff to a single cell; and (ii) Defendant's failure to assign Plaintiff to a single cell failed to provide Plaintiff meaningful access to restroom facilities.

Setting aside whether Defendant has the ability to assign Plaintiff to a single cell (something they argue they lack the ability to),[2] Plaintiff fails to provide evidence to establish that he has been denied meaningful access to restroom facilities.  In fact, Plaintiff fails to provide any Rule 56 evidence to support his claim.  Plaintiff argues that he lacks his required constant access to a toilet because being forced to defecate in front of his cellmate during lockdown hours "threatens to cause physical violence" and puts Plaintiff "under the stress of threat" from his cellmate.  (ECF No. 41, PageID #273).  But Plaintiff does not cite any evidence; he solely cites to

---

[2] The Court finds that there is an issue of material fact as to whether GCI can reasonably provide a single cell as an accommodation for disabled persons.  Defendant provides a sworn declaration from GCI's "Correction Warden Assistant" that "single-man" cells have been discontinued at GCI.  (ECF No. 42-1, PageID #296, ¶ 8).  Plaintiff provides a letter and his own sworn declaration that another prisoner at GCI was provided with a single cell in March 2024 and had remained there through February 2025.  (ECF No. 44-2, ECF No. 44-3, PageID #369, ¶ 4).  Defendant responded to this evidence with a sworn declaration from the Institutional Inspector at GCI, in which he attests that this other prisoner was not housed in a single cell, but temporarily housed in a cell with two bunks based on threats of serious harm to that prisoner.  (ECF No. 46-3, PageID #393–94).  The Institutional Inspector further attested that it is understood between GCI staff and the prisoner, that another prisoner would be celled with her if a suitable cellmate were transferred to GCI and passed PREA considerations.  (*Id.* at PageID #394, ¶ 9).  Although it appears that GCI does not currently provide single cell assignments, there is a question as to whether prisoners can be provided with assignments to a cell without another roommate in specific situations which necessitate such an assignment.  While it was done for the other prisoner for protective purposes, Defendant provides no argument as to why this could not be expanded to prisoners with disabilities, at least temporarily.

14

allegations in the complaint that he has "multiple arguments" with his cellmates about using the cell's toilet and has "issues" with cellmates when needing to use the toilet. (*Id.* (citing ECF No. 1, PageID #5, ¶¶ 30–31)).

This is not evidence. Fed. R. Civ. P. 56 requires a party to "go beyond the pleadings" and provide "admissible evidence of the essential elements of his claim." *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). A complaint is allegations of fact; it is not proof or evidence of facts. The allegations cited by Plaintiff are not evidence. *See id.*; W*right v. Farouk Sys., Inc.*, 701 F.3d 907, 911 n. 8 (11th Cir. 2012) ("[P]leadings are only allegations, and allegations are not evidence of the truth of what is alleged."). Plaintiff does not provide additional information regarding his access (or lack thereof) to the toilet in his cell, and he does not explain specific instances in which he has been unable to use the cell toilet. The allegations of arguments with cellmates denying him meaningful access are conclusory statements; these are insufficient to establish a genuine issue of material fact regarding whether Defendant denied Plaintiff meaningful access to a toilet. *See Keller v. Chippewa Cnty.*, 860 F. App'x 381, 388 (6th Cir. 2021) (holding that the plaintiff failed to create a genuine issue of material fact about whether the defendant denied him meaningful access to its services, programs, or activities because of insufficient information about such access).

Even accepting the allegations as true, they do not establish that Plaintiff is being denied access to a toilet during lockdown hours; it merely indicates that he is encountering some difficulty with cellmates. There are no allegations, let alone any evidence, that Plaintiff's cellmates have kept him from using the toilet; only that it has been a source of some contention. In a sworn declaration, the Institutional Inspector at GCI attested that he had received no complaints from Plaintiff regarding cellmate issues based on frequent bathroom use. (EFCF No. 46-3, PageID

#394, ¶ 12).  Although Plaintiff has been denied his "preferred" accommodation, he has not been denied meaningful access to a toilet by Defendant.[3]  *See Finely*, 62 F. 4th at 1000.  Plaintiff therefore cannot sustain his claim for failure to accommodate under the ADA and RA.  Accordingly, the Court **GRANTS** summary judgment in Defendant's favor on Counts I and II.

### B.      Count 3 – Eighth Amendment (Cruel and Unusual Punishment)

The complaint alleges that Defendant violated Plaintiff's Eighth Amendment rights by denying Plaintiff's "ADA request" for a single cell.  (ECF No. 1, PageID #6, ¶¶ 42, 44).  Plaintiff's motion for summary judgment argues that he is subjected to cruel and unusual punishment in violation of the Eighth Amendment because the lack of a single cell subjects him to threats, humiliation, and being forced to expose himself to others—in addition to failing to accommodate his medical needs.  (ECF No. 41, PageID #274).  Defendant construes Plaintiff's claim as a conditions of confinement claim under the Eighth Amendment and argues that Plaintiff has not pled, satisfied the elements of, or shown an issue of material fact for such a claim.  (ECF No. 42, PageID #290; ECF No. 45, PageID #376–77).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  It protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct.

---

[3] Plaintiff has also failed to demonstrate that he exhausted administrative remedies with respect to the alleged issues with his cellmates.  There is no evidence on the record that he complained to GCI or that he made a request to transfer cells based on the alleged arguments and tension over his use of the cell toilet.

16

3194, 82 L. Ed. 2d 393 (1984)).  Nor may a prisoner be denied "the minimal civilized measure of life's necessities" during his incarceration.  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

This, however, does not mandate that a prisoner be free from discomfort or inconvenience during incarceration.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  Indeed, "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]" *McMillian*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).  The Eighth Amendment is solely concerned with severe circumstances involving "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Thus, only a "deliberate indifference to serious medical needs" or extreme deprivations caused by the conditions of confinement will implicate the protections of the Eighth Amendment.  *McMillian*, 503 U.S. at 9; *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

In *Wilson*, the Supreme Court set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  Plaintiff must establish that a sufficiently serious deprivation has occurred.  501 U.S. at 298.  Seriousness is measured in response to "contemporary standards of decency." *McMillian*, 503 U.S. at 8.  Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  *Id*.  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  This standard is met if "the official

17

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Flanory v. Bonn*, 604 F.3d 249, 253–55 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834). A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

Plaintiff has not satisfied this standard. A prisoner does not have an Eighth Amendment right to be housed in a single cell; there is only an Eighth Amendment violation if he establishes that being assigned to a double cell resulted in unnecessary and wanton pain. *See Rhodes*, 452 U.S. at 347–48. While Plaintiff produces a progress note from Doctors Scoville and Katz, it merely notes a recommendation for a single cell—with no indication that other measures would not alleviate or address Plaintiff's medical needs. (EF No. 1-2, PageID #14). There is no evidence in the record to demonstrate that a single cell was medically necessary to address his condition or that the failure to provide a single cell did worsen and/or would worsen Plaintiff's condition. "While it is likely that single cell status would be more comfortable for plaintiff based on the issues associated with his condition, the standard for an Eighth Amendment claim is deliberate indifference, not comfortableness." *Harrison v. Burt*, No. 07-CV-11412, 2008 WL 4450286, at *13 (E.D. Mich. Sept. 29, 2008) (cleaned up) (citations omitted).

For evidence of inhumane/cruel prison conditions based on his current double-occupancy cell, Plaintiff solely cites his complaint and argues that he is subjected to cruel and unusual punishment:

> by being forced to endure threats of violence from cellmates (Complaint, ¶¶ 30-31), to endure humiliation of incontinence (Complaint, ¶31) and through being forced to be exposed in front of others (Complaint, ¶¶ 36-38), as well as by being forced

> to attempt to "hold it" when his body simply will not do so, causing pain and discomfort and unnecessary suffering (Complaint, ¶¶ 15, 31, 32).

(ECF No. 41, PageID #274).  As discussed above, the allegations in the complaint are not evidence and cannot by themselves establish an issue of material fact.  There is no documentation or other corroborating evidence of threats of violence from cellmates; and the complaint merely alleges that Plaintiff had "arguments" and "issues" with his cellmates regarding the use of the cell toilet. (ECF No. 1, PageID #5, ¶¶ 30–31).  There is also no evidence or allegations that any of these alleged threats were brought to the attention of Defendant or other prison officials.  Notably, this District dismissed Plaintiff's nearly identical  Eighth Amendment claim in his prior action against GCI for failure to state a claim.  *Stansell v. Grafton Corr. Inst.*, No. 17-cv-01892, 2018 U.S. Dist. LEXIS 26826, at *6–8 (N.D. Ohio Feb. 20, 2018) (dismissing Plaintiff's Eighth Amendment claim based on denial of a single cell accommodation despite allegations that his cellmate becoming irate with him for using the toilet too often).[4]

To the extent that Plaintiff alleges he was forced to hold his bowel movements, which caused pain and discomfort, there is no evidence on the record that Plaintiff was physically prevented from access to the toilet in cell during lockdown hours or that Plaintiff brought such an issue to the attention of Defendant.  Even accepting that Plaintiff was subjected to threats of violence from his cellmates, his Eighth Amendment claim still fails as a matter of law because there is no evidence of actual harm caused by his cellmates or that such harm was a near certainty. *See Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998) (affirming the dismissal of a plaintiff's Eighth Amendment claim where the plaintiff alleged threats of violence and fear of assault but provided no allegations of actual assault); *see also Thompson v. Mich. Dep't of Corr.*, 25 F. App'x

---

[4] On appeal from this decision, the Sixth Circuit solely vacated and remanded the district court's denial of Plaintiff's ADA and RA claims.  *Stansell v. Grafton Corr. Inst.*, No. 18-4009, 2019 U.S. App. LEXIS 24597, at *3 (6th Cir. Aug. 16, 2019).

357, 359 (6th Cir. 2002) (affirming the district court's dismissal where the plaintiff's claim of endangerment was unsupported by any allegation of actual harm).  Regardless, Plaintiff still fails to establish the subjective prong of the Eighth Amendment claim because there is no evidence that Defendant was made aware of these alleged threats.

Being forced to expose himself to his cellmate when using the toilet also does not constitute an Eighth Amendment violation.  The Court has found no authority establishing that a prisoner's lack of privacy from his cellmate while using the toilet amounts to an objectively serious deprivation (*i.e.*, inhumane or beyond the bounds of decency) that would implicate a prisoner's Eighth Amendment rights.  In fact, courts have consistently denied similar Eighth Amendment claims as failing to rise to the level of a constitutional deprivation.  *See, e.g.*, *Wilkins v. Macomber*, No. 2:16-CV-0475, 2023 U.S. Dist. LEXIS 43639, at *11–12 (E.D. Cal. Mar. 15, 2023) (finding no Eighth Amendment violation predicated on a prisoner having "to expose his private body parts to his cellmate when he urinated, defecated, and/or bathe[d]"); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) (finding that using the toilet in front of cellmates, "while undoubtedly embarrassing and uncomfortable, does not approach the standard of inhumane conditions that violate the Eighth Amendment"); *Chapdelaine v. Keller*, Civil No. 95-CV-1126 (RSP/GLS), 1998 U.S. Dist. LEXIS 23017, at *15 (N.D.N.Y. Apr. 16, 1998) ("Although, the court sympathizes with plaintiff's understandable desire for private sanitary facilities, . . . [this] complaint[ ] do[es] not equal a violation of a constitutional right.  Conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses."); *Jensen v. Gunter*, 807 F. Supp. 1463, 1476 (D. Neb. 1992) (finding no Eighth Amendment violation based on a prisoner being forced to use the toilet, dress and undress, and apply medically prescribed items to private areas under the observation of cellmates).

The cases where a prisoner was able to establish a viable Eighth Amendment claim based on forced placement in a double-occupancy cell involved allegations or facts establishing unhealthy sanitary conditions, a prisoner being forced to soil and clean themselves in front of cellmates, or exposure of a prisoner's naked body to a member of the opposite sex, all circumstances that are not alleged or established in this case. *See, e.g.*, *Berryman v. Haas*, No. 17-cv-10762, 2017 U.S. Dist. LEXIS 119261, at *17–18 (E.D. Mich. July 31, 2017) (concluding that a plaintiff might be able to establish an Eighth Amendment violation if he could prove the defendants forced him to "more than rarely, defecate on his clothing in front of his cellmate, defecate in his incontinence briefs but then change his soiled briefs and wipe himself clean in front of his cellmate, or disimpact his feces in front of his cellmate"); *Hazelton v. Wrenn*, No. 08-CV-419-JL, 2008 U.S. Dist. LEXIS 96074, at *11–13 (D.N.H. Nov. 14, 2008) (providing allegations of a prisoner being forced to soil themselves in front of others when denied the use of a bathroom); *Boyer v. Daviess Cnty. Det. Ctr.*, No. 4:19-CV-P77-JHM, 2019 U.S. Dist. LEXIS 178974, at *7–8 (W.D. Ky. Oct. 16, 2019) ("Although prisoners may retain reasonable expectations of bodily privacy in prison, such rights are necessarily curtailed due to the fact of confinement. This limited right to privacy, among other things, 'protects [prisoners] from being forced unnecessarily to expose their bodies to guards of the opposite sex.'" (citations omitted) (alteration in original)); *Bowers v. City of Phila.*, No. 06-CV-3229, 2007 U.S. Dist. LEXIS 5804, at *77 (E.D. Pa. Jan. 25, 2007) ("Many courts have determined that a prison's failure to provide access to an operable and sanitary toilet is a matter of grave concern from a constitutional perspective." (collecting cases)). Thus, Plaintiff has failed to establish severe circumstances involving extreme deprivations of life's necessities or a deliberate indifference to a serious medical need that would contravene society's evolving standards of decency. Plaintiff's Eighth Amendment claim therefore fails.

Even if Defendant's conduct did, in fact, violate Plaintiff's Eighth Amendment rights, his claim would still be barred by the doctrine of qualified immunity.  Defendant argues that he is entitled to qualified immunity because Plaintiff has the obligation, but has failed to, provide "any authority containing a set of facts similar to the facts of this matter to show that he had a constitutional right so clearly established in a particularized sense that the Defendant reasonably should have known their personal conduct would violate said purported constitutional right." (ECF No. 42, PageID #292–93).  Plaintiff did not provide any opposition to Defendant's invocation of qualified immunity; nor did he address the issue.  As a result, Plaintiff has waived any argument in opposition to granting qualified immunity to Defendant.  *See Bennett*, 86 F.4th at 324; *Brown*, 545 F. App'x at 372; *Santo's Italian Café*, 508 F. Supp. 3d at 207.  That said, even if Plaintiff had not waived opposition, Defendant would still be entitled to qualified immunity on the merits.

The doctrine of qualified immunity shields government officials from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Qualified immunity is not merely a defense to liability; the doctrine provides immunity from suit altogether.  *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019).  This form of immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and protects "all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (internal quotations omitted).

Courts engage in a two-step inquiry to determine whether a defendant is entitled to qualified immunity. "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)).

Since qualified immunity presumptively protects a public official conducting his official duties, the plaintiff bears the burden of showing that it does not apply to a defendant's conduct. *Id.* (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)); *see Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998) ("While acting in his role of law enforcement officer, [the officer defendant] presumptively receives immunity for acts committed in the course of his duties."). To do this, "the plaintiff must show a substantial correspondence between the conduct in question and prior law allegedly establishing the defendant's actions were clearly prohibited." *Hughes v. City of N. Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996). In other words, Plaintiff must show that "even if he suffered an Eighth Amendment violation, the contours of his constitutional right were 'sufficiently clear that every reasonable official would have understood that what he was doing violated that right.'" *McNair v. Pratt*, No. 24-1362, 2025 LX 317881, at *14 (6th Cir. Sep. 3, 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11–12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)) (alteration adopted).

Plaintiff has not identified any cases that substantially correspond to the circumstances of this case, such that Defendant would have clearly understood that denying a single cell to Plaintiff would violate the Eighth Amendment. *See Hughes*, 93 F.3d at 241; *McNair*, 2025 LX 317881, at *14. In fact, Plaintiff cites no cases or authority to support his Eighth Amendment claim. As discussed above, the Court itself has found no authority that substantially corresponds to the

23

circumstances of this case.  There is no clearly established law that would have alerted Defendant that his conduct violated the Eighth Amendment.  Thus, Defendant is ultimately protected by qualified immunity.

Because Plaintiff has failed to establish an Eighth Amendment violation based on his conditions of confinement, and Defendant is otherwise protected by qualified immunity, Plaintiff's Eighth Amendment claim fails as a matter of law.  Accordingly, the Court **GRANTS** summary judgment in Defendant's favor on the Eighth Amendment claim in Count III.

### C.      Count 3 – Fourteenth Amendment (Equal Protection Clause)

Plaintiff argues that he was denied equal protection of the law because Defendant deprived "Plaintiff of the ability to participate in programming that is available to other prisoners without Plaintiff's disability."  (ECF No. 41, PageID #274).  Defendant responds that this claim fails as a matter of law because Plaintiff did not identify or specify any disparate treatment regarding other prisoners being assigned to a single cell.  (ECF No. 45, PageID #377).  Defendant also argues that he is entitled to summary judgment on this claim because assignment to a single cell is not a fundamental right and disabled persons are not a "suspect class" for equal protection purposes. (ECF No. 42, PageID #291).  Plaintiff does not respond to this argument in his opposition.

Not only does Plaintiff provide no opposition, his motion for summary judgment and various reply and response briefs do not particularly address, clarify, or explain the precise nature of, or the support for, Plaintiff's equal protection claim.  As a result, without any opposition to dismissal or otherwise providing support, Plaintiff has abandoned his equal protection claim in Count III, and waived any argument in opposition to the dismissal of that claim.  *See Bennett*, 86 F.4th at 324; *Brown*, 545 F. App'x at 372; *Santo's Italian Café*, 508 F. Supp. 3d at 207.

Even if Plaintiff had not abandoned this claim, it would also fail on the merits.  The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[A] valid equal protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Reform America v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022).

First, Plaintiff alleges a burden on his ability to participate in programming, but Plaintiff has no fundamental right to participate in prison rehabilitative or educational programming.  *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Parr v. Caruso*, No. 1:10-cv-109, 2010 U.S. Dist. LEXIS 17013, *7–8 (W.D. Mich. Feb. 25, 2010) (collecting cases) ("Federal courts consistently have found that prisoners have no constitutionally protected interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment.").  Second, Plaintiff fails to allege a viable suspect class because "[m]edically disabled persons are not a suspect class for purposes of an equal protection challenge, . . ."  *Reinoehl v. Whitmer*, No. 22-1343, 2023 U.S. App. LEXIS 9153, at *9 (6th Cir. Apr. 17, 2023) (citing *S.S.*, 532 F.3d at 457); *see also Hansen v. Rimel*, 104 F.3d 189, 190 n.3 (8th Cir. 1997) ("[T]he disabled do not constitute a 'suspect class' for purposes of equal protection analysis.").  *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006) ("The disabled are not a suspect class for equal protection purposes.").  Finally, Plaintiff has not alleged, nor provided any argument, that there was no rational basis for the alleged disparate treatment.

Even if Plaintiff had established any of the above, the claim would still fail.  To succeed on an equal protection as a suspect class or on a class-of-one basis, a plaintiff must show disparate

25

treatment of similarly situated persons.  *See Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 684 (6th Cir. 2016); *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011).  Equal protection plaintiffs must prove relevant similarity: that all relevant aspects of their situation are nearly identical to the persons to whom they compare themselves.  See *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  Plaintiff does not identify any similarly situated persons; nor does the record establish any such person who was granted a single cell accommodation and was not excluded from "unit-based" programming.  Additionally, "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required."  *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).  To prevail on his equal protection claim, Plaintiff needed to demonstrate intentional discrimination based on his disability status, not merely that he was treated unfairly from an individual perspective.  *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).  Plaintiff has provided no evidence of *intentional* discrimination motivated by his disability.

Because Plaintiff abandoned his equal protection claim, and has failed to sufficiently allege or support such a claim, the claim fails as a matter of law.  Accordingly, the Court **GRANTS** summary judgment in Defendant's favor on the equal protection claim in Count III.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Michael Stansell's motion for summary judgment (ECF No. 41) is **DENIED**.  Defendant Keith Foley's motion for summary judgment (ECF No. 42) is **GRANTED**.  Summary judgment is entered in Defendant's favor on Counts I, II, and III.  Because

all claims have been resolved, Plaintiff's motion for appointment of counsel (ECF No. 55) is

**DENIED AS MOOT**.

      **IT IS SO ORDERED.**

Date: April 7, 2026

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**